UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COREY JEROME HOWELL,

        Plaintiff,

v.                           Case No. 22-C-987

PATRICIA M. HAZIGA, TERRY R. DULLE,
JOAN M. HUNNULA, JAN CATHERINE BRITT,
ROGER KRANTZ, CAPT. NEIBUHR,
DIANE J. HUNT, RENEE M. ANDERSON, and
RONDA J. BERGEMANN,

        Defendants.

## SCREENING ORDER

        Plaintiff Corey Jerome Howell, who is currently serving a state prison sentence at Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On September 27, 2022, the Court screened Howell's complaint and gave him an opportunity to file an amended complaint, which he did on November 15, 2022. Howell also filed a motion to appoint counsel. The Court will screen the amended complaint as required by 28 U.S.C. §1915A and will resolve Howell's motion.

### SCREENING OF THE AMENDED COMPLAINT

        As explained in the original screening order, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. The complaint must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Howell explains that in 2012 he was diagnosed with chronic kidney disease (CKD). In February 2020, he was incarcerated at Waupun Correctional Institution, where he received routine blood draws and medication reviews to monitor his condition. In September 2020, he was transferred to Stanley Correctional Institution. Dkt. No. 12 at 4.

According to Howell, while at Stanley, he began to experience flu-like symptoms. Howell states that he submitted several health services requests with general complaints that he connected to his CKD. According to Howell, he was seen by Defendant Nurses Terry Dulle on September 4 and November 20, 2020, by Diane Hunt on November 9, 2020, by Renee Anderson on November 15, 2020, and by Patricia Haziga on February 4, 2021. Howell asserts that at various times he complained of pain, flu-like symptoms, choking in his sleep, and/or a metallic taste in his mouth, all of which are associated with kidney failure. Howell asserts that he repeatedly requested labs to assess his kidney function, but his requests were ignored. He states that none of the nurses referred him to the prison doctor for evaluation. Howell also explains that he was regularly tested for COVID during this time, and the results were always negative. Dkt. No. 12 at 4-6.

According to Howell, his blood was finally drawn on February 16, 2021, at which time Dr. Joan Hunnula informed Howell that his kidneys had failed and that he would need to go to the hospital. Howell explains that at the hospital a catheter was placed, and he was put on

hemodialysis. He also asserts that he would later learn that, during a biopsy, an artery in his left kidney was severed, causing him to bleed internally into his bladder. Dkt. No. 12 at 4-6.

Following his hospital stay, Howell was transferred to Fox Lake Correctional Institution. He states that he had severe pain in the area around his penis and was urinating blood. Howell asserts that, on March 1, 2021, his biopsy site was examined by Defendant Nurse Roger Krantz, but Krantz did not follow up or address Howell's symptoms. The next day, Howell approached Defendant Nurse Jan Britt while she was doing routine drop off and pick up on the unit and described his symptoms to her. According to Howell she directed him to fill out a health services request, which he did. Howell explains that he was seen by Defendant Nurse Ronda Bergemann on March 4, 2021. She was unaware of his complaints, but after Howell explained them to her, she sent him a cup to collect a urine sample. About an hour later, Howell was sent to Waupun Memorial Hospital, where he was diagnosed with a urinary tract infection and prescribed antibiotics. Dkt. No. 12 at 6.

The following day, on March 5, 2021, Howell was again seen by Nurse Krantz for his complaints of burning and blood in his urine. Krantz informed Howell that his antibiotics would arrive that day and gave Howell anal pads for the bleeding. Howell explains that he then went back to his unit, where he encountered Defendant Captain Niebuhr. Howell asserts that he started to urinate blood uncontrollably. He explains that he tried to get his "urine jug" from his cell but then dropped it to run to the bathroom. Howell asserts that he learned that officers and Nurse Britt came to the unit to help. According to Howell, the supervisor asked if the ambulance would pick him up from the unit, but Nurse Britt responded that they would take him to health services to get cleaned up. Howell explains that he was then transported to the hospital where he underwent three major surgeries and had three blood transfusions. Dkt. No. 12 at 7-8.

3

Case 1:22-cv-00987-WCG    Filed 11/23/22    Page 3 of 9    Document 14

## THE COURT'S ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). An inexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference. *Petties*, 836 F.3d at 728. As the Seventh Circuit has noted, "That is especially so if that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citing *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007)).

Howell may proceed on a deliberate indifference claim against Nurses Dulle, Hunt, Anderson, and Haziga based on allegations that, despite them knowing about his CKD diagnosis, they refused to refer him to the prison doctor or order labs to confirm his kidney function after he informed them that he was suffering from symptoms associated with kidney failure. He also may proceed on a deliberate indifference claim against Nurse Krantz based on allegations that he performed only a cursory evaluation and did not refer Howell to a prison doctor or otherwise follow up after Howell complained that he was in severe pain and urinating blood following major surgery.

Howell does not, however, state claims against the remaining Defendants. As to Dr. Hunnula, Howell alleges she ordered labs to assess his kidney function and that, once she received

4

the results, she immediately sent him to the hospital. Although there appears to have been some delay in ordering the labs, Howell alleges that the nurses, not Dr. Hunnula, were responsible for that delay. Under §1983, a defendant is liable for damages only if she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Given that Dr. Hunnula acted promptly in response to Howell once she learned of his condition, the Court cannot reasonably infer that she was deliberately indifferent to his condition.

Howell also fails to state a claim against Nurse Britt based on allegations that she directed him to fill out a health services request slip after he informed her of his symptoms. According to Howell, he approached her while she was performing other assigned duties on his unit. The Seventh Circuit has explained that "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Howell's symptoms of pain, flu-like symptoms, and blood in his urine were serious, but they were not an emergency, so Britt was not obligated to abandon her duties to assist him. Britt informed Howell how to request medical attention, and this is all that the Constitution requires.

Nor does Howell state a claim against Nurse Bergemann. Howell asserts that when she first examined him, she did not know about his complaints of blood in his urine and so she was unprepared to take a urine sample. However, according to Howell, after he explained his

5

symptoms to her, she sent him a cup to collect a sample, and within an hour of collecting the sample, she sent him to the hospital. Bergemann's prompt response to Howell's complaints after learning about them do not support an inference that she was deliberately indifferent to his serious condition. Finally, Howell does not state a claim against Captain Neibuhr, who Howell talked to after Krantz informed him his antibiotic would come in later in the day. Howell alleges that, while they were talking, he began to experience a medical emergency. According to Howell, he was transported to the hospital by ambulance. It is not clear what Howell thinks that Captain Neibuhr could have done differently. Given that the Court cannot reasonably infer from Captain Neibuhr's response that he was deliberately indifferent to Howell's condition, Howell fails to state a claim against him.

In sum, the Court finds that Howell may proceed on an Eighth Amendment deliberate indifference claim against Nurses Dulle, Hunt, Anderson, Haziga, and Krantz.

### MOTION TO APPOINT COUNSEL

On November 15, 2022, Howell filed a second motion to appoint counsel on the basis that his claims are complex. He explains that he has made efforts to find a lawyer without the Court's help, but no one has agreed to represent him. As the Court already explained to Howell, *see* Dkt. No. 9 at 6-7, in a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court considers whether the indigent plaintiff made a reasonable attempt to obtain counsel and whether, given the difficulty of the case, the plaintiff appears competent to litigate it himself. *See Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). The motion is, therefore, denied.

Howell satisfies the first prong because he made reasonable efforts to find a lawyer without the Court's help.  Nevertheless, the Court will deny his motion because he appears competent to represent himself through discovery and the briefing of summary judgment.  Howell's filings to date have been clear and easy to understand, and contrary to his characterization, his claim and the relevant legal standard are straightforward.  Howell alleges that he informed Defendants of his condition and symptoms and that Defendants ignored him.  Howell was able to clearly state in his complaint and amended complaint what happened and why he believes his constitutional rights were violated.  This gives the Court confidence that he has the capacity to prepare and respond to discovery requests and, eventually, to respond to a summary judgment motion.

After Defendants have an opportunity to respond to Howell's amended complaint, the Court will enter a scheduling order setting deadlines for discovery and the filing of dispositive motions.  During discovery, Howell may ask Defendants to provide him with information that he believes he needs to prove his claim.  He may ask Defendants up to twenty-five written questions (called interrogatories in the Federal Rules) and he may ask them to give him documents that they have in their possession.  *See* Fed. R. Civ. P. 33 and 34; Civil L. R. 33.  Defendants may object to a request to the extent they believe the request is improper.  If Howell does not agree with an objection, he should try to informally resolve the dispute with Defendants' lawyer.  *See* Civil L. R. 37.  Most parties can resolve discovery disputes without the Court's involvement.  If he and Defendants' lawyer are unable to resolve the dispute on their own, he may file a motion asking the Court to get involved.  If he does so, he must describe the discovery dispute in detail and explain what efforts the parties made to resolve the dispute before involving the Court.  As a reminder, although Howell should direct his discovery requests to Defendants, he must mail them to their lawyer.

The Court reminds Howell that unfamiliarity with the litigation process and limited education are common among prisoners. He is encouraged to review the guide the Court sent with the original screening order. That may provide Howell with helpful information as he litigates this case. Also, many of the challenges prisoners face, such as limited law library time and needing time to process and respond to motions, can be addressed by extending deadlines. If Howell asks the Court to extend a deadline, he should explain why he needs more time and how much additional time he needs. The Court will not needlessly delay resolution of this case, but upon a showing of good cause, the Court will be responsive to requests for more time.

In short, the Court finds that Howell is capable of representing himself at this time. If new challenges arise that he does not believe he can overcome on his own, he may renew his motion. If he does so, he should be specific about what challenges he faces and what efforts he has made to overcome those challenges.

**IT IS THEREFORE ORDERED** that Joan Hunnula, Jan Catherine Britt, Captain Neibuhr, and Ronda Bergemann are **DISMISSED** because Howell fails to state a claim against them upon which relief can be granted.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Howell's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Patricia Haziga, Terry Dulle, Roger Krantz, Diane Hunt, and Renee Anderson.

**IT IS FURTHER ORDERED** that the Motion to Appoint Counsel, Dkt. No. 13, is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Patricia Haziga, Terry Dulle, Roger Krantz,

Diane Hunt, and Renee Anderson shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Green Bay, Wisconsin this 22nd day of November, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
